

**U.S. DEPARTMENT OF JUSTICE**

**Cole Finegan**
*United States Attorney*
*District of Colorado*

*Tom Minser and Albert Buchman*
*Assistant United States Attorneys*

*1801 California Street, Suite 1600   (303) 454-0100*
*Denver, CO  80202*

September 27, 2022                                     *Via Electronic Mail*

Mark Scabavea
Scabavea & Associates
301 Sheridan Blvd.
Lakewood, Colorado 80226

     Re:    <u>*United States v. Jose Galiano*</u>
              Case No. 22-cr-00208-RMR

Dear Counsel:

Pursuant to the Federal Rule of Criminal Procedure 16(a)(1)(G)[1] and Federal Rule of Evidence 702, 703, and 705, we provide this written summary of the anticipated testimony of Jean McAllister, who is an expert or witness with specialized knowledge in the respective areas outlined below.

A copy of Ms. McAllister's *Curriculum Vitae, Record of Expert Testimony,* and *Summary of Possible Expert Testimony* are included with this letter.

**<u>Testimony of Jean G. McAllister, MSW</u>**

The government intends to call Ms. Jean McAllister in its case-in-chief to educate the jury regarding several topics that will assist them in understanding and evaluating the evidence presented at trial and dispel various myths and facts about sexual assault.

Ms. Jean McAllister has specialized knowledge and expertise relevant to sexual assault cases, including 1) victim recall and reporting of traumatic events, 2) victim presentation, and 3) the nature and dynamics of sexual assault, including delayed disclosure. She has gained this specialized knowledge through over 40 years' experience working with victims of sexual assault as a therapist and social worker; working as a program administrator for Colorado' Sex Offender Management Board and director of the University of Denver's Title IX office, her education, her review of the literature, and her extensive training and teaching in the field. Ms. McAllister's testimony and opinions, identified below and in detail in her *Summary of Possible Expert Testimony*, are based on her education, training, and extensive experience in this field. <u>Note</u>, Ms. McAllister has

---

[1]    This disclosure is also intended to comply with amendments to the same rule that will become effective on December 1, 2022.

not been provided nor will be provided any discovery or other factual information in the case and has not met with or otherwise observed any victim or witness. Similarly, the identity of any victim or witness has not been disclosed to her. She will testify in a "blind" capacity.

1)  There are identified, consistent psychological and coping responses to trauma induced during and after sexual assault, initiated by stress chemicals that accompany trauma. Sexual assault victims may respond during the sexual assault incident in various ways, including, fight, flight, freeze, and collapse responses. One response in particular, "frozen fright" is described as an inability or limited ability to act and maybe accompanied by extreme narrowing in focus or other limitations on the ability of the victim to consciously experience all parts of the event.

2)  Victims may respond during and after sexual assault trauma with anxiety, which is experiencing extreme distress and awareness of pain, fear, and terror regarding the event. This is what most people expect to see from sexual assault victims. But victims may also respond by dissociative responses, which includes the compartmentalization or failure to integrate all or part of one's experiences. Victims describe this response as feeling numb, feeling like they cannot believe or understand what is happening to them, being emotionally shut down and having only limited ability to act. Victims who are dissociating often look relatively normal or emotionally flat, rarely appearing emotionally distressed to others.

3)  Post-trauma, sexual assault victims recall and report their traumatic experience in varied but consistently identifiable ways. These reports are often sensory or experiential, including images, physical sensations, emotional or behavioral responses that the victim experienced during the traumatic event. The information about a traumatic experience is not always subject to the victim's voluntary recall—this may result in different details or more information being reported over time and differing amounts of distress at various times. In some cases, this includes an inability to explain a victim's own behavior. Sexual assault victims may leave vivid impressions of parts of a traumatic event and few or no impressions of other events. Other people often misperceive reports of trauma, believing them to be inaccurate, because they include experiential details and have missing information or differing information over time.

4)  Traumatic experience and reminders of that experience are often perceived as distressing and overwhelming to victims. This may lead to counter-intuitive coping behaviors or avoidance of reminders of the trauma, including trying to behave as if nothing is wrong, minimizing or attempting to normalize the trauma, and resisting discussion of the event. These avoidance behaviors can also include not reporting or delayed reporting of the event or avoiding law enforcement personnel or others attempting to assist the victim as they are often reminders of the traumatic experience.

5)  Two primary victim presentations of trauma have been identified: 1) expressed reactions, associated with anxiety responses, which includes visible distress and negative emotions, and 2) controlled reactions, consistent with dissociative responses, which includes flat or numb looking demeanor with little emotion present. The latter presentation

may include behaviors that appear counter-intuitive, such as spending time with an offender after a sexual assault without appearing overtly distressed to others. Controlled responses are consistent with "pseudo-adjustment," which is when a rape victim attempts to behave normally to try to convince themselves that the trauma has not harmed or changed their lives. Some victims fluctuate between both responses.

6) Women are most vulnerable to "acquaintance rape" and "non-stranger sexual assault." Typically, this form occurs when the offender and victim have met in a social situation that is perceived by the victim to be safe in her social environment. Studies of college-aged who are sexually assaulted by someone they know or have met in what they perceived to be a safe environment show that only a tiny minority of them report being sexually assaulted. Positive relationships offenders develop with victims and have with others in the social situation may make it less likely that others will believe or support victims if they disclose sexual assault. Environments that are dominated by males, like many schools and universities and military environments often exacerbate others' lack of belief and support when victims of sexual assault do report. Offenders often try to have ongoing contact with their victim as a strategy to demonstrate to others that nothing is wrong. This is particularly prevalent when offenders are intimate partners of victims or in ongoing housing, work, or school relationships with their victims.

7) For reasons consistent with dissociative coping behaviors, many sexual assault victims continue to have contact with their offenders, which can seem counter-intuitive to the public and may lead others to blame the victim. This behavior is part of "pseudo-adjustment" where victims try to act as if nothing has changed or attempts to protect against negative consequences such as victim blaming or retaliation, especially in educational settings. In fact, the literature indicates that victims of sexual assault by acquaintances may take time to understand that their experience was even sexual assault due to common beliefs in our culture that sexual assault is committed by strangers. Most victims of sexual assault feel great shame and humiliation about their experience and may feel powerless or violated, or they may blame themselves for the experience or begin to distrust their own judgment.

8) It is generally believed that victims fight to the point of injury. In fact, particularly in non-stranger rapes, many victims are compromised to the point where they cannot actively fight or flee before they realize they are in grave danger. This freezing trauma response makes physical resistance less likely and, as does dissociation. Saying that they are not ready, turning their heads, crying, struggling, and refusing to participate are other means of resistance used by victims who are being sexually assaulted. Some victims submit due to fear or inability to resist, but submission is not consent to sexual behavior.

9) A large majority of the public assumes that every victim will report sexual assault and that they report immediately. Actually, victims rarely report sexual assaults to authorities, and victims' beliefs about law enforcement based on race or culture can shape whether they do not or delay report. Most large national studies indicate that only a minority of sexual assault victims ever report, including college women. Reasons for not reporting include fear of not being believed or being blamed for the assault, fear of others

knowing what happened to them and fear of retaliation by the offender or the offender's colleagues or friends Victims often delay their reports for long periods of time. For instance, studies show that the average delay for reporting among college-aged victims who actually disclose is almost a year. Furthermore, victims rarely report directly to law enforcement.

Our trial preparations are not yet complete. Should we learn of additional testimony that is, or might be, expert in nature, we will provide further notice as soon as practicable. The government requests any discovery to which it is entitled under Fed. R. Crim. P. Rule 16, and particularly, Rule 16(b)(1)(C).  Please call if you have any questions.

Regards,


*s/ Tom Minser*
Tom Minser
Assistant United States Attorney

*s/ Albert Buchman*
Albert Buchman
Assistant United States Attorney

# JEAN G. MCALLISTER, MSW

## PROFESSIONAL EXPERIENCE

**JGM Consulting, LLC**
**Consultant and Trainer**
**Denver, Colorado**
2004-Present

Provide consultation and training for various agencies regarding interpersonal violence, trauma and victimization, sexual assault, Title IX, child abuse, sexual abuse, intimate partner or domestic violence, offender dynamics and management, secondary trauma prevention and intervention, building resilience, interpersonal violence policy development, and organizational and Board development.

**WINGS Foundation, Inc.**
**Lead Consultant, Adult Survivors of Childhood Sexual Abuse (ASCSA) System Improvement Project**
**Lakewood, CO**
2019-Present

Provide consultation and expertise on a multi-year project to improve the availability and quality of services provided across Colorado to adult survivors of childhood sexual abuse, including a range of trauma informed support groups addressing various stages of healing and recovery, mental health services, substance abuse services, services for family members and loved ones of survivors, health care and alternative care services through a multidisciplinary approach. The project will also develop and provide training for professionals serving this population and it will develop and revise existing materials available to ASCSAs and their loved ones for education and self-help.

**The Innocent Justice Foundation, SHIFT Wellness Program and HART Wellness Program**
**Trainer and Curriculum Development**
**San Diego, CA**
2013-Present

Develop curricula for preventing and addressing secondary trauma and building resilience for Internet Crimes Against Children Commands, judges, assistant US attorneys, US probation officers, victim advocates, child protection workers, child advocacy; and mental health practitioners impacted by the sexual exploitation and abuse of children, and other forms of serious trauma through grants funded by the Office of Juvenile Justice and Delinquency Prevention, Office of Justice Programs, US Department of Justice and by the Motorola Solutions Foundation.

**Various Jurisdictions in Federal, District, County, Military, and Municipal Courts**
**Expert Witness**
1985-Present

Provide expert testimony and case consultation regarding sexual assault, Title IX, child abuse, sexual abuse, intimate partner or domestic violence, domestic violence homicide, victim trauma, sexual harassment and offender behavior and management.

**University of Denver**
**Office of Title IX**
**Director and Title IX Coordinator**
**Denver, Colorado**
2015 – 2017

Serve as the leading authority and central resource for all University constituencies on issues related to Title IX, including institutional efforts to build and sustain a safe, gender-equitable campus climate for all members of the University community. Develop, implement, and coordinate campus-based strategic efforts aimed at the prevention of sexual and relationship violence, stalking, and other forms of sex and gender-based discrimination. Ensure prompt, effective, and equitable intake, investigation, and timely resolution of all reported instances of sexual and relationship violence, stalking and sex and gender-based discrimination. Oversee ongoing training, education, and consultation on Title IX for all students, faculty, and employees. Provide individual guidance and assistance to complainants, respondents, and survivors of sexual and relationship violence, stalking, and sex and gender-based discrimination. Submit annual reports on the volume, nature, and disposition of filed complaints, data collection, climate assessment, and pattern monitoring. Serve as the principal contact for government inquiries pursuant to Title IX.

**Department of Psychology**
**University of Colorado at Denver**

**Denver, Colorado**
**Lecturer**
2014

Serve as adjunct faculty for the Department of Psychology. Design and teach the Department's Domestic Abuse course addressing intimate partner violence, child and elder abuse.

**Division of Boards and Commissions**
**Colorado Department of Human Services**
**Denver, Colorado**
**Special Projects Coordinator**
2012-2015

Complete special projects for the Division and the Department including data collection and analysis on existing programs, on Boards Commissions, Councils and Committees, on Department-wide and State and County Department collaborations and develop policy analysis to assist with Division and Departmental decision-making. Write reports and executive summaries for management. Assist CDHS offices, divisions and programs with planning, organizational development, and meeting facilitation.

**Colorado Commission for Individuals Who Are Blind or Visually Impaired (CCIBVI)**
**Colorado Department of Human Services**
**Denver, Colorado**
**Administrator**
2009-2012
**Temporary Administrator**
2008

Serve as Administrator for the CCIBVI. Administer all Commission activity related to making policy recommendations regarding the needs of people who are blind or visually impaired in Colorado, conduct statewide needs assessments, develop and manage an information and referral website and interface with other programs and agencies. Plan Commission and committee meetings, write or oversee all correspondence and publications and arrange training for members.  Supervise administrative staff, complete all management functions required by the Division, including budget planning, decision items, policy analysis and fiscal notes related to proposed legislation, and agency planning with other units. Prepare the CCIBVI annual reports to the legislature and assist the CCIBVI with the development of a strategic plan.

Jean G. McAllister                                                                                           4

**HealthBridge Alliance**
**Denver, Colorado**
**Program Director**
2007-2009

Serve as Program Director for a nonprofit organization that supports professionals working with trauma in a variety of settings to build resiliency skills for addressing secondary trauma and compassion fatigue related to their work. Develop program curricula for training targeted to a broad variety of differing professional groups; serve as lead program trainer; coordinate, train and supervise the professional contract training team; coordinate all training activities, conduct regular training evaluations and program evaluation.

**Victim Outreach Information**
**Golden, Colorado**
**Temporary Development Director**
2007

Serve as temporary Development Director through a time limited grant to assist with development of new funding sources for the agency. Write grants to governmental agencies and private foundations for agency funding, research and identify new funding sources, assist Executive Director and Board with fund raising and special events.

**Project Safe Haven, Colorado**
**Colorado Organization for Victim Assistance**
**Denver, Colorado**
**On-Site Co-Coordinator of Victim Advocacy Services**
2005

Provide on-site coordination of victim advocacy services through the Colorado Organization for Victim Assistance for Project Safe Haven, Colorado's response to over 3,000 incoming evacuees from hurricanes Katrina and Rita. Provide on-site coordination and leadership for the victim advocates who responded to evacuees and direct intervention with evacuees. Volunteers provided various interventions over the two months including accompanying each family who arrived by air-lift or other means through the initial registration process including identification, medical screening, assignment of temporary housing, clothing and toiletries and assessment for mental health issues; later, coordinating registration; providing assistance with accessing financial services provided by FEMA and the Red Cross; coordinating transportation to locate permanent housing, and medical appointments;

verifying leases and arranging for evacuee families to receive furniture and seeking assistance with additional or difficult needs.

**Colorado Coalition Against Sexual Assault**
**Denver, Colorado**
**Executive Director**
2004

Serve as Executive Director for CCASA, a statewide membership organization with over 150 members including sexual assault survivors, rape crisis centers, victim advocacy programs, victim advocates, law enforcement agencies, public health agencies, medical professionals, prosecutors, public officials, domestic violence programs and community programs throughout Colorado.  Direct and administer all agency activity, including program planning and implementation, policy decision making and implementation, staff direction, oversight and supervision, budget planning, fundraising, oversee grant writing, reporting and administration, plan Board and committee meetings, arrange training for Board members, oversee publications and correspondence, provide consultation and training in the arena of sexual assault and effective response to sexual assault victims to rape crisis centers, child abuse programs, mental health professionals, criminal justice personnel, health care providers and policy makers, both locally and nationally.  Serve as CCASA representative and liaison with state agencies, criminal justice programs, the victim services community and national sexual assault and prevention programs and alliances.

**University of Denver, Graduate School of Social Work**
**Denver, Colorado**
**Adjunct Faculty**
2004

Serve as adjunct faculty to the Graduate School of Social Work. Develop and co-teach the School's first course in domestic violence intervention for second year graduate students.

**Colorado Department of Human Services, Colorado Works Division**
**Denver, Colorado**
**Program Administrator, Domestic Abuse Assistance Program**
2001- 2004

Serve as Program Administrator for the Colorado Domestic Abuse Assistance Program. Administer all activities related to the distribution and management of state and federal program dollars available to programs serving domestic violence victims and their children

in Colorado. Develop and implement an RFA process, a funding selection process, contract with funded agencies, distribute funds to programs, provide local program oversight and monitoring. Supervise staff assigned to the program and complete all management functions required by the Division, including budget planning, decision items, fiscal notes, and agency planning with other units.  Develop and revise state rules for domestic violence programs receiving DAAP dollars in conjunction with the Funding Selection Committee and the Advisory Committee for the program. Provide training for human services personnel, criminal justice agencies, victim services agencies and private service providers throughout Colorado. Co-Chair the Department's Domestic Violence Task Force and serve as the Departmental Representative to the Colorado Domestic Violence Offender Management Board. Serve as program liaison with other state agencies, the Colorado Coalition Against Domestic Violence, local domestic violence programs, criminal justice programs, and the victim services community. Assist with policy development, report to the legislature and the Federal Government on program activities and compile statewide statistics regarding services to domestic violence victims.

**American Prosecutor's Research Institute**
**Alexandria, Virginia**
**Program Faculty, Sexual Assault and Domestic Violence Prosecutors Trainings and Leadership Summits**
2000-2004

Serve as contract faculty for National and State Prosecutor trainings.  Develop course curriculum and materials.  Teach developed course content related to sexual assault, domestic violence, expert testimony and work related secondary trauma.

**Denver C.A.R.E.S. Counselor Training Program**
**Denver, Colorado**
**Faculty**
1994-2002

Responsible for developing course content and teaching courses on sexual trauma treatment and victim/survivors of domestic violence in a program that provides training for working professionals.

**Colorado Department of Public Safety, Division of Criminal Justice**
**Denver, Colorado**
**Program Administrator, Sex Offender Management Board and Co-Manager, Office of Domestic Violence and Sex Offender Management**

Jean G. McAllister                                                                                    7

1997-2001

Co-manage the unit that administers statewide policy making Boards for domestic violence offenders and sex offenders. Serve as Program Administrator for the Colorado Sex Offender Management Board.  Administer all Board activity, plan Board and committee meetings, write or oversee all correspondence and publications and arrange training for Board members.  Supervise all staff assigned to Board projects, complete all management functions required by the Division, including budget planning, decision items, fiscal notes, and agency planning with other units. Develop and revise treatment standards in conjunction with the Board members, administer statewide regulatory process for sex offender treatment providers, evaluators, plethysmograph and Abel Screen examiners and polygraph examiners and provide training for criminal justice personnel and treatment providers throughout Colorado.  Serve as Board representative and liaison with other state agencies, criminal justice programs, and the victim services community. Assist with policy development, report to the legislature on Board business and participate in research activities initiated by the Board and DCJ. Serve as staff liaison for the SOMB's role as a national resource site for excellence in sex offender management with the Center for Sex Offender Management, sponsored by the Office of Justice Programs, the National Institute of Corrections and the State Justice Institute.

**Columbine Connection Victim Advocates**
**Victim Outreach Information and the Jefferson County Sheriff's Victim Advocates**
**Golden, Colorado**
**Consultant and Trainer**
1999-2000

Provide training and education regarding victimization, trauma, appropriate intervention and service provision to the victim advocates hired to respond to the Columbine High School shootings. Meet regularly with the advocates and their supervisors to review cases, do case intervention planning, and address advocate needs.  Provide education, training and support to affiliated services including the faculty and staff of Columbine High School, Jefferson Center for Mental Health Columbine Connections Staff and Columbine High School students, their parents and families.

**Assault Survivors Assistance Program at West Pines, Lutheran Medical Center**
**Wheat Ridge, Colorado**
**Therapist**
1989-1997

Provide individual, group, couples and family therapy for adult and adolescent survivors of sexual assault, domestic violence and other serious trauma and their significant others. Perform initial screening and assessment, develop treatment plans, maintain case records, and provide advocacy with community agencies.  Provide consultation services to medical staff and inpatient trauma assessments as requested. Provide independent family reunification safety assessments in sexual abuse cases where there is conflict among related professional recommendations. Provide education and training regard to community professionals, service providers and the criminal justice system. Provide prevention education to schools and community groups.  Represent program to community groups, task forces and statewide coalitions.

**Community College of Aurora, Victim Assistance Program**
**Aurora, Colorado**
**Instructor**
1988-1990

Develop and teach course on Domestic Violence.  Participate in program development for the Victim Assistance Program.  Serve as mentor faculty for beginning instructors.

**Seniors' Resource Center**
**Wheat Ridge, Colorado**
**Social Worker**
1988-1989

Provide case management services to seniors and their families.  Services include crisis intervention, assessment, treatment planning, home visits, individual and family counseling, referrals, emergency food, housing and utility assistance.  Coordinate victim assistance program.  Supervise a Senior Peer Counseling Program for isolated and homebound clients.

**Gateway Battered Women's Shelter**
**Aurora, Colorado**
**Program Supervisor**
1983-1988

Responsible for supervision and direction of programs providing direct service to clients including 24-hour crisis line, 24-hour residential shelter and non-residential counseling program providing group, individual, family and couples counseling.  Supervise 15 clinical staff and 22 relief staff. Develop training materials and procedures for operation.  Perform program development and evaluation, grant writing, budget planning, statistical evaluation

and public relations tasks.  Provide training and education regarding domestic violence to community professionals, service providers and the criminal justice system.  Provide direct services to clients.

**Gateway Battered Women's Shelter**
**Aurora, Colorado**
**Caseworker**
1981-1983

Provide counseling to victims of domestic violence.  Provide individual, group and family counseling and co-facilitate couples counseling with victims and perpetrators when safety conditions are met.  Perform crisis intervention and assessment on 24-hour crisis line, complete client intake procedures, develop treatment plans and goals with clients, complete termination plans, maintain case records and act as an advocate with community agencies.

**Arapahoe County Department of Social Services**
**Littleton, Colorado**
**Caseworker**
1979-1980

Provide services to adolescents and their families experiencing problems with delinquency, abuse and severe family conflict.  Perform assessment and intake, treatment planning, individual, group and family counseling, referral, recommendations to the court, coordinated services with RCCFs, Day Treatment, Mental Health, Probation, Schools and Law Enforcement.

**Excelsior Youth Center**
**Aurora, Colorado**
**Group Living Counselor**
1978-1979

Supervise daily routine in a highly structured residential program for adolescent girls. Provide individual and group counseling, life skills training, treatment planning, and maintained case records.

Jean G. McAllister                                                                                          10

**Weld County Division of Human Resources, CETA Youth Program**
**Greeley, Colorado**
**Summer Youth Counselor**
1978

Provide counseling to youth in part-time summer employment situations.  Prepare and present youth and employer orientations, certified eligibility, matched youth with jobs, performed site visits and kept payroll.

EDUCATION

**Master of Social Work**
University of Denver, Graduate School of Social Work
Denver, Colorado
1993

**Dean Emil M. Sunley Award for Meritorious Service to the School and the Profession of Social Work, University of Denver, Graduate School of Social Work**
Recipient
1993

**Bachelor of Arts**
University of Northern Colorado
Greeley, Colorado
1978

**Eye Movement Desensitization and Reprocessing**
Completed Level II Training with Francine Shapiro
1995

COMMUNITY SERVICE AND PROFESSIONAL DEVELOPMENT

**Colorado Coalition Against Sexual Assault**
**Public Policy Committee**
2017 - Present

**Sexual Assault Interagency Council**

2015 - 2017
**Title IX Working Group**
2015 - 2017

**Honored as a Change Maker**
**Colorado Coalition Against Sexual Assault**
2014

**Rocky Mountain Victim Law Center**
Board of Directors
2012 - Present
President
2018 – Present
2015 - 2017
Treasurer
2013 -2014

**Ending Violence Against Women Project**
Trainer and Curriculum Development for Sexual Assault, Domestic Violence, Title IX and
Expert Witness Trainings.
2002-Present

**Colorado Organization for Victim Assistance**
Policy Committee
2010 to Present
Conference Program Committee
Co-Chair, Sexual Assault Track
2006 to 2011
Co-Chair, Human Services Track
2002, 2003, 2012, 2013 and 2014

**Victim Outreach Information**
Advisory Board
2009-2021
Board of Directors
2007-2009
2005-2006

Jean G. McAllister                                                                                          12

**Jefferson County Community Crisis Response Team**
Founding Member, Trainer and Team Member
1999-Present

**Colorado Sex Offender Management Board**
Victim Advocacy Committee
2009-2016

**Domestic Violence Program, Colorado Department of Human Services**
Funding Recommendation Committee
2010 – 2015

**United States Air Force Judge Advocate General School**
Sexual Assault Victim Trauma Curriculum Development and Faculty
2012

**Criminal Justice Center for Innovation, Fox Valley Training Center for the US Department of Justice, Office for Justice Programs, SMART Office**
Comprehensive Approaches to Sex Offender Management Training for the States
Curriculum Development and Trainer for Victim Impact, Community Coordination and Policy Development.
2010 – 2011

**Colorado Department of Corrections**
Prison Rape Elimination Act Advisory Committee
2010-2011

**Victim Advocacy Handbook: Providing Support for Survivors**
Co- Author
Published by US Air Force Space Command Sexual Assault Prevention and Response Programs, 2007 and
Buckley Air Force Base Sexual Assault Prevention and Response Program, 2006

**Colorado Victim Assistance Academy, Colorado Organization for Victim Assistance**
Advisory Board
2003-2004
Faculty
2002-2006

**University of Colorado Regent's Independent Investigation Commission**
Formed to investigate the allegations of sexual assault and alcohol abuse in the CU
Football Recruiting Program
Governor Appointed Commissioner
2004

**Board of Directors, Colorado Coalition Against Sexual Assault**
Immediate Past Chair
2000-2004
Chair
1996-2000
Education Committee Chair
1995-1997
Metro Area Representative
1994-1996

**Colorado Domestic Violence Offender Management Board**
Appointed as Colorado Department of Human Services Representative
2003-2004
Appointed as Division of Criminal Justice, Colorado Department of Public Safety
Representative
2000-2001

**Greenbook Oversight Committee**
El Paso County Federal Demonstration Project on Child Maltreatment and Domestic
Violence
2003-2004

**Sexual Assault Prevention Advisory Committee, Colorado Department of Public Health**

Jean G. McAllister                                                                                    14

**and Environment**
Appointed Member
1996-2004

**United States Air Force Academy**
Senior Executive Leadership Training on Sexual Assault
Invited to Develop Curriculum and as a Presenter for the Training
2003

**National Judicial Education Program**
Non-Stranger Rape Training Video
Invited to Develop Curriculum and as Faculty for the Video
2003

**High Risk Victim Offender Dialogue Advisory Committee, Colorado Forum on Restorative Justice**
2002-2003

**Attorney General's National Summit on Sex Offender Management**
Invited Participant
December 2000

**Colorado Governor's Star 2000 Award for Citizenship**
Recipient
2000

**National Non-Stranger Sexual Assault Symposium**
Invited Faculty and Author
"Challenging Myths: Understanding Lack of Consent in Non-Stranger Sexual Assault"
In the National Non-Stranger Sexual Assault Proceedings Report
October 1999

**Social Change Award, Project Safeguard**
Recipient
1998

**Denver Women's Commission**
Appointed Member
1996-1997

**First Judicial District Domestic Violence Treatment Provider's Certification Board**
Appointed victim services representative
1990-1994; Co-Chair, 1994

**Family Violence Training Institute**
Founding member and faculty
1989-1994

**Project Safeguard**
Women's Treatment Standards Committee
1985-1993
Board of Directors 1987-1993; Chair, 1991-1992

**State Commission for Domestic Violence Offender Treatment Standards, Training and Education Committee**
1991

**Abusive Men Exploring New Directions**
Board of Directors
1985-1991
Chair
1988-1989

**Standards for Services to Battered Women and their Children**
Co-Author and Co-Editor, published by the Colorado Trust
1990

**Community College of Aurora**
Faculty Ethics Project
1990

**Seniors' Resource Center**
Staff Advisory Committee
1989

Jean G. McAllister                                                                                              16

**Colorado Domestic Violence Coalition**
Core Committee on Racism and Homophobia in Shelters
1985-1986
Standards Committee
1983

**Statewide Committee for Standards for the Treatment of Batterers**
1985

**Arapahoe County District Attorney's Task Force on Victims of Crime**
Chair, Legislative Committee
1983-1984

REFERENCES

Furnished on request

*Jean G. McAllister, MSW*

## RECORD OF EXPERT TESTIMONY
### Since January 2006

| Date | Case Name | Number | Case Type | Agency | Testimony |
|------|-----------|--------|-----------|--------|-----------|
| 06-22 | Lujan | 13CR1829 | Domestic Violence Homicide | 20th JDDA | Testified at Trial |
| 06-22 | Martinez | 20CR331 | Sexual Assault on a Child | 19th JDDA | Testified at Trial |
| 06-22 | Mendoza-Leon | 20CR866 | Sexual Assault on a Child | 19th JDDA | Testified at Trial |
| 05-22 | Larks | 19CR2553 | Sexual Assault on a Child and Child Abuse | 19th JDDA | Testified at Trial |
| 05-22 | Orton | 20CR4229 | Domestic Violence Sexual Assault | 17th JDDA | Testified at Trial |
| 04-22 | Knudtson | 20CR1252 | Sexual Assault on a Child | 19th JDDA | Testified at Trial |
| 03-22 | Van Eck | 20CR3225 | Sexual Assault | 1st JDDA | Testified at Trial |
| 01-22 | Benson | 19CR148 | Sexual Assault | 17th JDDA | Testified at Trial |
| 11-21 | Hastings | 20CR1642 | Domestic Violence Sexual Assault | 19th JDDA | Testified at Trial |
| 11-21 | Shaver | 19CR1712 | Sexual Assault | 20th JDDA | Testified at Trial |
| 11-21 | Black v. MKSB et al | 19CV30687 | Sexual Assault on an At-Risk Adult | Burg, Simpson, Eldredge, Hersh and Jardine | Testified at Trial |
| 10-21 | Williams | 19CR2646 | Sexual Assault on a | 2nd JDDA | Testified at Trial |

| | | | Child | | |
|---|---|---|---|---|---|
| 09-21 | Carrasco | 19CR2509 | Sexual Assault on a Child | 19th JDDA | Testified at Trial |
| 09-21 | Zamora | 07CR547 | Sexual Assault | 19th JDDA | Testified at Trial |
| 09-21 | Salazar | 19CR528 | Sexual Assault on a Child | 19th JDDA | Testified at Trial |
| 02-20 07-21 | Black | 18CR864 | Sexual Assault on a Child | 19th JDDA | Testified at Motions Testified at Trial |
| 06-21 | Butler | 18CR9217 | Sexual Assault | 2nd JDDA | Testified at Trial |
| 05-21 | Sanders | 19CR2187 | Sexual Assault on a Child | 19th JD DA | Testified at Trial |
| 04-21 | Atkinson | 19JD309 | Sexual Assault and Sexual Exploitation | 20th JDDA | Testified at Trial |
| 03-21 | Doucet | 19CR339 | Domestic Violence | 20th JDDA | Testified at Trial |
| 10-20 | Roper | 19CR447 | Sexual Assault | 20th JD DA | Testified at Trial |
| 10-20 | Hansen | L19M623 | Unlawful Sexual Contact | 20th JD DA | Testified at Trial |
| 10-20 | Bicking | 19CR1043 | Domestic Violence Strangulation | 1st JD DA | Testified at Trial |
| 09-20 | Lopez-Marquez | 19CR07923 | Sexual Assault | 2nd JD DA | Testified at Trial |
| 02-20 | Jaramillo | 18CR2283 | Domestic Violence | 20th JD DA | Testified at Trial |
| 02-20 | Henson | 18CR10 | Sexual Assault on a Child | 9th JD DA | Testified at Trial |
| 01-20 | Martinez | 18CR4355 | Domestic Violence Sexual Assault | 17th JD DA | Testified at Trial |
| 10-19 | Medina | 19CR17 | Domestic Violence | 1st JD DA | Testified at Trial |
| 10-19 | Coffin | 18CR757 | Stalking | 20th JD DA | Testified at Trial |

| | | | | |
|---|---|---|---|---|
| 08-19 | Ramirez-Martinez | 18CR1890 | Sexual Assault | 20th JD DA | Testified at Trial |
| 08-19 | Martinez | 18CR1632 | Domestic Violence | 20th JD DA | Testified at Trial |
| 08-19 | Rodriguez | 17CR2180 | Sexual Assault on a Child Position of Trust | 19th JD DA | Testified at Trial |
| 07-19 | Unknown | Unknown | Domestic Violence | 18th JD DA | Testified at Grand Jury |
| 07-19 | Marcotte | 18CR4056 | Sexual Assault on a Child | 2nd JD DA | Testified at Trial |
| 07-19 | Hanson | 18CR2093 | Sexual Assault | 1st JDDA | Testified at Trial |
| 05-19 | Sanchez-Mariel | 18CR1376 | Sexual Assault on a Child | 2nd JD DA | Testified at Trial |
| O5-19 | Munden Jr. | 18CR659 | Domestic Violence | 6th JD DA | Testified at Trial |
| 04-19 | Abughalib | 17CR2254 | Sexual Assault | 20th JD DA | Testified at Trial |
| O4-19 | Sampson | 18CR1574 & 18CR1726 | Domestic Violence | 18th JD DA | Testified at Trial |
| 04-19 | Ohlmeier | 17CR4451 | Domestic Violence | 1st JD DA | Testified at Trial |
| O3-19 | Gramling | 18CR1890 | Sexual Assault | 19th JD DA | Testified at Trial |
| 03-19 | Perez-Terrones | 17CR1726 | Sexual Assault on a Child - Incest | 19th JD DA | Testified at Trial |
| 02-19 | Ostebo | 18RGMT 117891 | Massage Therapist Licensing | CO OAG for DORA, Office of Massage Therapy Licensure | Testified at Licensure Revocation Hearing |
| 02-19 | Rodriguez | 16CR2291 | Domestic Violence Sexual Assault | 19th JD DA | Testified at Trial |
| 01-19 | Rodriguez | 16MO9827 | Domestic Violence | 2nd JD DA | Testified at Trial |
| 01-19 | Rodriguez | 16CR2291 | Domestic Violence | CO Public | Testified at Motions |

| | | | Sexual Assault | Defender, Weld County | |
|---|---|---|---|---|---|
| 01-19 | Valdez | 17CR2380 | Sexual Assault on a Child – Pattern of Abuse | CO Public Defender, Weld County | Testified at Motions |
| 11-18 09-18 | Roger | 17CR808 | Sexual Assault | 19th JD DA | Testified at Trial Testified at Motions |
| 08-18 | Martinez-Perez | 17CR180 | Murder | 6th JD DA | Testified at Trial |
| 08-18 04-18 | Makowski | 17CR576 | Sexual Assault At Risk Adult | 19th JD DA | Testified at Trial Testified at Motions |
| 08-18 07-18 | Meyer | 17CR2661 | Sexual Assault on a Child – Incest | 19th JD DA | Testified at Trial Testified at Motions |
| 07-18 | Rodarte | 17CR1596 | Stalking and Domestic | 19th JD DA | Testified at Trial |
| 07-18 | Rolf | 16CR7418 | Domestic Violence | 1st JD DA | Testified at Trial |
| 06-18 | Vallejos | 16CR112 | Sexual Assault Special Prosecution | Colorado Attorney General | Testified at Trial |
| 05-18 | Enriquez | 16CR2684 | Sexual Assault on a Child – Position of Trust | 19th JD DA | Testified at Trial |
| 04-18 | Myers | 16CR511 | Sexual Exploitation, Sexual Assault, Sexual Assault on a Child, Multiple Victims | 19th JD DA | Testified at Trial |
| 03-18 | Wittrock | Montana Case ADC16257 | Sexual Assault on a Child | Cascade County Attorney | Testified at Sentencing |
| 03-18 | Timothy | 17CR1058 | Sexual Assault | 20th JD DA | Testified at Trial |
| 03-18 | Yager | 11CR0003 | Murder | 7th JD DA & CO AG | Testified at Trial |
| 01-18 | " | " | " | Montrose Regional Public Defenders | Testified at Motions |

| 01-18 | Wilson | 17CR1207 | Domestic Violence Sexual Assault | 17th JD DA | Testified at Motions |
| 12-17 | Rodriguez | MT Case ADC-14-528-D | Sexual Assault | Cascade County Attorney | Testified at Trial |
| 12-17 | Vanderpayue | 16CR425 | Sexual Assault | 20th JD DA | Testified at Trial |
| 12-17 | Wyban | 16CR1589 | Sexual Assault on a Child | 20th JD DA | Testified at Trial |
| 10-17 | Bessee | 17JD77 | Sexual Assault on a Child | 20th JD DA | Testified at Trial |
| 10-17 08-17 | Norris | 16CR634 | Sexual Assault | 20th JD DA | Testified at Trial Testified at Motions |
| 09-17 | Bettridge & Bettridge as Personal Representatives and Legal Guardians of Bettridge v Arellano, Catholic Health Initiatives, the Gardens at St. Elizabeth, & Centura Health Corporation | 16CV33504 | Sexual Assault on an Adult with Disabilities | Burg Simpson Eldredge Hersh Jardin, PC | Testified at Deposition |
| 08-17 | Booth | 16CR2900 | Domestic Violence Sexual Assault | 17th JD DA | Testified at Trial |
| 8-17 | Eldridge | 16CR2224 | Domestic Violence, Strangulation, Child Abuse | 17th JD DA | Testified at Trial |
| 08-17 | Tiba | 13CR650 | Sexual Assault | 20th JD DA | Testified at Trial |
| 08-17 | Eldridge | 16CR2224 | Domestic Violence Stalking and Child Abuse | 17th JD DA | Testified at Trial |
| 08-17 | Norris | 16CR634 | Sexual Assault | 20th JD DA | Testified at Motions |
| 08-17 | Booth | 16CR2900 | Domestic Violence Sexual Assault | 17th JD DA | Testified at Trial |
| 07-17 | Romero | 16CR826 | Domestic Violence | 19th JD DA | Testified at Trial |

| | | | | | |
|---|---|---|---|---|---|
| 06-17 | Romero | 16CR2100 | Domestic Violence Sexual Assault | 20th JD DA Special Prosecution For 1st JD DA | Testified at Trial |
| 04-17 | Martinez | 16M468 | Violation of Protection Order Domestic Violence | 20th JD DA | Testified at Sentencing |
| 11-15 | Donnell III | 14CR0005 | Murder | 16th JD DA | Testified at Trial |
| 06-15 | King | 14 CR 172 | Sexual Assault | 20th JD DA | Testified at Trial |
| 06-15 | Ceballos-Rios | 14 CR 1622 | Sexual Assault | 20th JD DA | Testified at Trial |
| 05-15 | Peru | 13 CR 2140 | Sexual Assault and Domestic Violence | 18th JD DA | Testified at Trial |
| 05-15 | Schwartz | DC14-125 | Sexual Assault | Missoula, MT County Atty | Testified at Motions Testified at Trial |
| 05-15 | Zbylski v Douglas Cty School District Et al | 14-cv-1676-BNB | Title IX Sexual Assault on a Child | Hutchinson, Black & Cook | Testified at Deposition |
| 05-15 | Unknown | Unknown | Sealed | 18th JD DA | Testified at Grand Jury |
| 04-15 | Dockery | 09 CR 542 | Domestic Violence Sexual Assault | 18th JD DA | Testified at Trial |
| 04-15 | Leigh | 14 CR 1405 | Sexual Assault | 1st JD DA | Testified at Trial |
| 04-15 | Logan | 14 CR 66 | Domestic Violence Sexual Assault | 13th JD DA | Testified at Trial |
| 03-15 | Johnson | 13 CR 1900 | Domestic Violence | 20th JD DA | Testified at Trial |
| 03-15 | Lechman | 14 M 532 | Sexual Assault on a Child | 20th JD DA | Testified at Trial |
| 03-15 | Lujan | 13 CR 1829 | Homicide | 20th JD DA | Testified at Trial |

| | | | | | |
|---|---|---|---|---|---|
| 02-15 | Milligan | 13 CR 2346 | Sexual Assault on a Child | 18th JD DA | Testified at Trial |
| 02-15 | Logan | 14 CR 66 | Domestic Violence Sexual Assault | 13th JD DA | Testified at Motions |
| 02-15 | Flipse | 14 M 100 | Harassment and Child Abuse | 18th JD DA | Testified at Trial |
| 10-14 | Schwartz | DC14-125 | Sexual Assault | Missoula, MT County Atty | Testified at Motions Testified at Trial |
| 10-14 | Lewis | 13CR2200 | Sexual Assault | 18th JD DA | Testified at Trial |
| 10-14 | Aldridge | 13CR113 | Sexual Assault on a Child/Incest | 11th JD DA | Testified at Trial |
| 10-14 | Corbin | 13CR2125 & 13CR2745 | Domestic Violence | 18th JD DA | Testified at Trial |
| 09-14 | Emslie | 14M132 | Domestic Violence | 11th JD DA | Testified at Trial |
| 09-14 | Smith | 12CR2236 | Sexual Assault | 18th JD DA | Testified at Trial |
| 09-14 | Cortez | 13CR5553 | Domestic Violence | 2nd JD DA | Testified at Trial |
| 07-14 | Floyd IV | 13CR1502 | Sexual Assault On a Child | 1st JD DA | Testified at Trial |
| 07-14 | Kattes | 13CR1424 | Child Abuse and Domestic Violence | 1st JD DA | Testified at Trial |
| 06-14 | Murray | 13CR35 | Sexual Assault , Multiple Victims | 20th JD DA | Testified at Trial |
| 06-14 | Pasquale | 13CR1617 | Domestic Violence | 20th JD DA | Testified at Trial |
| 06-14 | Brothers | 12CR48 | Sexual Assault On a Child | 14th JD DA | Testified at Trial |
| 05-14 | Deleon | 13CR124 | Sexual Assault On a Child | 20th JD DA | Testified at Trial |
| 04-14 | Nardi | 13CR33 | Domestic Violence Sexual Assault | 9th JD DA | Testified at Trial |

| Date | Name | Case No. | Charge | Jurisdiction | Testimony |
|------|------|----------|--------|--------------|-----------|
| 04-14 | Ogle | 13CR156 | Domestic Violence Arson | 13th JD DA | Testified at Motions, |
| 12-13 | Ferguson | DC12-654 | Domestic Violence | Yellowstone County Attorney Montana | Testified at Trial |
| 12-13 | Rivas-Retana | 13CR463 | Domestic Violence Sexual Assault | 8th JD DA | Testified at Trial |
| 12-13 | Nagy | 11CR209 | Domestic Violence Sexual Assault | 20th JD DA | Testified at Trial |
| 11-13 | Leathers | 12CR1717 | Sexual Assault | 20th JD DA | Testified at Trial |
| 11-13 8-13 & 7-13 | Medina | 11CR2159 | Domestic Violence Homicide | 18th JD DA | Testified at Trial Testified at Motions Testified at Motions |
| 10-13 | Gibbens | 12M4515 | Domestic Violence | 1st JD DA | Testified at Motions |
| 6-13 | Lopez | 12CR1974 | Domestic Violence Homicide | 1st JD DA | Testified at Trial |
| 2-13 | McDowell | 12JD279 | Sexual Assault on A Child | 20th JD DA | Testified at Trial |
| 11-12 | US v. Key | | Sexual Assault on A Child | USAF Trial Counsel | Testified at Court Martial |
| 7-12 | Brouillette | 11CR70 | Sexual Assault | 14th JD DA | Testified at Trial |
| 7-12 | Cahill Jr. | 11CR1543 | Sexual Assault | 20th JD DA | Testified at Trial |
| 6-12 | Frantz | 10CR1900 | Sexual Assault On a Child | 20th JD DA | Testified at Trial |
| 3-12 | Vlassis | 01CR1160 | Domestic Violence Sexual Assault Re-trial after Appeal | 18th JD DA | Testified at Motions |
| 3-12 2-12 | Martinez | 09CR3904 | Sexual Assault | 4th JD DA | Testified at Trial Testified at Motions |

JGM Case List                                                                                      8

| 2-12 | Cowart | 09CR47 | Sexual Assault | 18th JD DA | Testified at Trial |
|---|---|---|---|---|---|
| 12-11 | Weaver | 11W-USA13-0097 | Domestic Violence Sexual Assault | USA, District of Colorado | Testified at Motions |
| 12-11 | Rogers | 08CR1459 | Sexual Assault on A Child | 20th JD DA | Testified at Trial |
| 11-11 | Ariaza | 11JD71 | Sexual Assault on A Child | 1st JD DA | Testified at Trial |
| 11-11 | Bertrand | 11CR416 | Sexual Assault on a Vulnerable Adult | 4th JD DA | Testified at Motions Testified at Trial |
| 11-11 | Lancaster | 11CR1307 | Sexual Assault | 4th JD DA | Testified at Trial |
| 10-11 | Smith | 10CR2608 | Sexual Assault | 4th JD DA | Testified at Trial |
| 6-11 | Jones | 09CR124 | Sexual Assault on a Child | 20th JD DA | Testified at Trial |
| 5-11 | McCoy | 09CR1489 | Sexual Assault | 20th JD DA | Testified at Trial |
| 5-11 | Sanchez | 10CR115 | Sexual Exploitation Of a Child, Position Of Trust | 14th JD DA | Testified at Trial |
| 5-11 | Dockery | 09CR47 | Domestic Violence Sexual Assault | 18th JD DA | Testified at Trial |
| 4-11 7-10 | Abdul-Rahman | 09CR2035 | Sexual Assault | 20th JD DA | Testified at Trial Testified at Motions |
| 3-11 | Spykstra | 09CR2 | Sexual Assault on a Child, Position of Trust | 11th JD DA | Document Review Testified at Trial; Rebuttal |
| 2-11 | Koeppen | 10M5147 | Domestic Violence & Child Abuse | 1st JD DA | Testified at Trial |
| 2-11 11-10 | Daniels | 10M12331 | Domestic Violence | 2nd JD DA | Testified at Trial Testified at Motions |

| | | | | | |
|---|---|---|---|---|---|
| 11-10 | Pauley | 04CR1849 | Sexual Assault on a Child | 2nd JD DA | Testified at Trial |
| 11-10 | McComb | 10CR1056 | Domestic Violence | 4th JD DA | Testified at Trial |
| 11-10 | Bradburn | 10CR651 | Sexual Assault on a Child | 1st JD DA | Testified at Trial |
| 11-10 | Kleppe | 09CR2443 | Domestic Violence | 1st JD DA | Testified at Trial |
| 10-10 | Wicks | 09CR4377 | Sexual Assault | 4th JD DA | Testified at Trial |
| 8-10 | Deeds | 08CR3652 | Domestic Violence Sexual Assault | 17th JD DA | Testified at Trial |
| 8-10 | Fields | 10CR23 | Domestic Violence Sexual Assault | 20 JD DA | Testified at Trial |
| 8-10 | Kho | 09CR265 | Sexual Assault | 5th JD DA | Testified at Motions Testified at Trial |
| 8-10 | Redcloud | 10CR332 | Domestic Violence Sexual Assault | 20th JD DA | Testified at Trial |
| 8-10 | Ross | 09CR171 | Sexual Assault on a Child | 20th JD DA | Testified at Motions Testified at Trial |
| 7-10 | Abdul-Rahman | 09CR2035 | Sexual Assault on a Child | 20th JD DA | Testified at Trial |
| 7-10 5-10 | Sandoval | 09CR1039 | Domestic Violence Murder | 19th JD DA | Testified at Trial Testified at Motions |
| 6-10 | Alkadi | 09CR1875 | Domestic Violence | 20th JD DA | Testified at Trial |
| 2-10 | Perez | 09CR1212 | Domestic Violence | 1st JD DA | Testified at Trial |
| 2-10 | Graedel | 08CR2046 | Sexual Assault on a Child | 20th JD DA | Testified at Motions |
| 1-10 | Diperri | 08CR3036 | Sexual Assault | 4th JD DA | Testified at Trial |
| 1-10 | Daly | 09CR463 | Domestic Violence | 1st JD DA | Testified at Trial |
| 10-09 | Howard v | 06CV00282 | Sexual Assault | Kilmer, Lane | Testified at |

Clarkson et al                                    Deposition

| | | | | | |
|---|---|---|---|---|---|
| 7-09 | Richardson | 08CR673 | Sexual Assault on a Child | 20th JD DA | Testified at Trial |
| 6-09 | Gallegos | 80CR2495 | Domestic Violence | 1st JD DA | Testified at Trial |
| 4-09 | Hernandez | 07CR2227 | Sexual Assault on a Child | 19th JD DA | Testified at Trial |
| 4-09 | Smith | 07CR3014 | Domestic Violence | 1st JD DA | Testified at Trial |
| 4-09 | Dancer | 07CR2382 | Sexual Assault on a Child | 1st JD DA | Testified at Trial |
| 2-09 | Regnier | 08CR261 | Domestic Violence | 1st JD DA | Testified at Motions Testified at Trial |
| 1-09 | Burgos | 08CR1485 | Sexual Assault | 4th JD DA | Testified at Trial |
| 11-08 | Dewing | | Teacher Licensing | CDL OAG | Testified at Administrative Law Hearing |
| 10-08 | Robinson | 07CR3289 & 07CR5290 | Sexual Assault | 4th JD DA | Testified at Trial |
| 6-08 | Marsh | 07CR1417 | Sexual Assault | 4th JD DA | Testified at Trial |
| 6-08 | Ward | 07JD DA556 | Sexual Assault | 1st JD DA | Document Review Testified at Motions Testified at Trial |
| 4-08 | Busing | 07JD DA667 | Sexual Assault | 1st JD DA | Testified at Trial |
| 4-08 | Shaffer | 07JD DA668 | Sexual Assault | 1st JD DA | Testified at Trial |
| 4-08 | Lindsey | 07JD DA313 | Sexual Assault | 1st JD DA | Testified at Trial |
| 3-08 | Vanduyn | 07CR2385 & 07CR1029 | Domestic Violence and Sexual Assault | 1st JD DA | Testified at Motions, Qualified. Testimony Not allowed at Trial |
| 3-08 | Nepomucino-Hernandez | 07M1746 | Sexual Assault on a Child | 1st JD DA | Testified at Trial |

JGM Case List                                                          11

| | | | | | |
|---|---|---|---|---|---|
| 2-08 5-08 | Coronado | 06CR956 | Sexual Assault on a Child | 4th JD DA | Testified at Motions Testified at Trial |
| 11-07 | Adams | 07CR525 | Domestic Violence | 4th JD DA | Testified at Trial |
| 11-07 | Ortega | 07CR949 | Domestic Violence | 1st JD DA | Testified at Trial |
| 10-07 | Kennedy | 06CR3590 | Sexual Assault | 17th JD DA | Testified at Motions, Qualified Testimony not allowed at Trial |
| 10-07 | Barraza | 07M1402 | Domestic Violence | 1st JD DA | Testified at Trial |
| 8-07 | Behara | 07M476 | Domestic Violence | 1st JD DA | Testified at Trial |
| 8-07 | Brophy | 06CR275 | Sexual Assault | 5th JD DA | Document Review Testified at Trial |
| 7-07 | Milne | 06CR3327 | Sexual Assault on a Child | 1st JD DA | Testified at Trial |
| 6-07 | Hayes | 04CR00376 | Sexual Assault | 4th JD DA | Testified at Trial |
| 5-07 | Milne | 06CR3327 | Sexual Assault on a Child | 1st JD DA | Testified at Motions Testified at Trial |
| 6-07 5-07 | Johnson | 06CR27779 | Domestic Violence | 1st JD DA | Testified at Trial Testified at Motions Hearing: Qualified |
| 4-07 | Lamar | 05CR467 | Sexual Assault | 20th JD DA | Testified at Trial |
| 4-07 | Lokori | 06M2479 | Domestic Violence | 1st JD DA | Testified at Trial |
| 1-07 | Saiz | 05CR4190 | Sexual Assault on a Child | 1st JD DA | Document Review Testified at Trial |
| 1-07 | Truan | 06JD DA791 | Sexual Assault | 1st JD DA | Testified at Trial |
| 10-06 | Mahan | 05CR1106 | Sexual Assault | 8th JD DA | Testified at Motions Testified at Trial |

| 6-06 | Nagai | 05CR0905 | Domestic Violence | 18th JD DA | Document Review |
| | | | | | Testified at Trial |
| 2-06 | Brown | 05CR1488 | Sexual Assault | 4th JD DA | Testified at Trial |
| 2-06 | Wyoming v Yellowbear | | Child Abuse Resulting in Death | Hot Springs County DA | Document Review |
| | | | | | Testified at Motions |
| | | | | | Testified at Trial |
| 1-06 | Baliunas | | Sexual Assault on a Child | 20th JD DA | Testified at Trial |

# JEAN G. McALLISTER, MSW

**Summary of Possible Expert Testimony**

September 16, 2022

RE:    United States v. Galiano
       22-CR-00208-RMR

Prepared for Al Buchman and Thomas Minser, Assistant United States Attorneys
United States Attorney's Office, District of Colorado

This Summary serves as a brief overview of my possible testimony in the above referenced case. My testimony will be based on more than 40 years' experience working with victims of crime including sexual assault; my experience in sex offender management; my education, ongoing study and review of the relevant literature; and extensive training and teaching in the field. My potential testimony will be focused on general education regarding sexual assault. There is a substantial body of research literature that indicates there is more misinformation and misunderstanding about sexual assault than about any other type of crime. The education I will provide includes general information about sexual assault including the nature and dynamics of these situations, typical victim reactions and offender behavior, trauma and typical trauma reactions of victims during sexual assaults and over time after their exposure to the trauma of sexual assault. This will assist finder(s) of fact with their assessment of the case by providing accurate information about sexual assault to which they may not normally have access.

I have not reviewed any documents prior to preparing this Summary. I have not met any of the parties involved in the case, nor have I have evaluated or made any findings about any of the parties or their conditions or diagnoses. While I can make no findings about the actual occurrence of any of the events reported by any of the parties or about the veracity of any of their statements, I will be able to indicate whether situations or behaviors that are described are consistent or inconsistent with typical dynamics of and reactions to sexual assault as described in this summary.

**Nature and Dynamics of Victim Responses During Traumatic Events**

There are consistent human responses to trauma and traumatic events, including sexual assaults, which are described in the research literature as events so powerful, harmful, threatening or severe that they overwhelm typical coping behaviors and require extraordinary coping mechanisms or responses that are outside the range of normal functioning. These responses include physiological responses that impact both behavior and psychological function during and after the traumatic event. They are initiated by stress chemicals released into the system during traumatic experience. They

are designed to assist with surviving the traumatic event. In our culture, these responses are commonly referred to as fight or flight reactions. In reality, there are three, not two, typical reactions during trauma: fight, flight or freeze. There is also, more rarely, a fourth possible response, collapse. In situations where exposure to trauma is ongoing or prolonged, where resistance or escape are perceived by the victim to be impossible or where attempts to resist have been ineffective, trauma victims often freeze, or describe an inability, or limited ability to act, sometimes called tonic immobility in the trauma literature. In the rape trauma literature, this behavior is described as "frozen fright." These responses may be accompanied by an extreme narrowing in focus or other limitations on the ability of the victim to consciously experience all parts of an event. These reactions are typically formed rapidly and without the conscious awareness or voluntary action of trauma victims. They are normal human responses to trauma and are adaptive, in that they facilitate survival of the immediate trauma. They can also impact the victim's behavior post trauma. The literature indicates that freezing, or immobility responses, which are common during sexual assaults, may result in more severe symptoms. Some recent research describes these responses as the fear/defense reflexes or the defense cascade.

The extraordinary psychological coping mechanisms referred to in the previous definition of trauma include two responses during traumatic events. Anxiety, or the experience of extreme distress and awareness of pain, fear and terror regarding the event, is one of those responses. Its psychological function is to ensure that the victim is aware that there is something wrong, that it is potentially harmful and to assist them in initiating attempts to resist, escape or freeze. This is the response that most people expect to see from sexual assault victims in our culture.

The other response is the dissociative response. It includes the compartmentalization of, or failure to integrate, all or part of one's experience of an event. Victims often describe this response as feeling numb or like they are dreaming; feeling like they cannot believe or understand what is happening to them; being emotionally shut down and having only limited ability to act, such as following an offender's instructions during an assault; or being unable to generate voluntary action or feel emotion. In extreme cases, dissociation can involve not remembering part or all of one's experience of a traumatic event. The psychological function of dissociation is to protect the psyche from the overwhelming negative impact of the traumatic event. Victims who are dissociating often look relatively normal or emotionally flat. They rarely appear to be seriously emotionally distressed to untrained others. While most people believe that people who look more upset have been more seriously harmed, the research literature and my experience indicate that people who dissociate during traumatic events are more likely to have long term negative effects from the trauma, especially if they continue to use dissociative coping behavior following the trauma.

**Victim Recall and Reporting of Traumatic Events**

Post trauma, victims typically recall and report information about their traumatic experience in consistent ways. These reports often include information that is sensory or experiential, rather than cognitive, in nature. The information reported often includes images, physical sensations, emotional responses or behavioral responses that the victim experienced during the traumatic event. This

sensory information is most often reported as discrete components of experience rather than as a complete recounting of an entire traumatic event with a beginning, middle and end. The information about their traumatic experience is not always subject to the victim's voluntary recall or dismissal. This may result in different details or more information being reported over time; or in the victim demonstrating differing amounts of distress at various times. In some cases, this includes an inability to explain a victim's own behavior, such as wanting to scream, but not being able to do so and not being able to explain why. Trauma victims' reports of what they remember about their traumatic experience typically include fewer cognitive details, such as dates, times, or order of events. The narrowing of focus that sometimes accompanies trauma reactions may leave a victim with vivid impressions of parts of a traumatic event and few or no impressions of other parts of the event. Central components of a victim's experience during trauma are more likely to be remembered vividly and peripheral details are often less vivid and sometimes missing from a victim's memory of a traumatic event. Use of alcohol or drugs can further obscure what a victim is able to recall and report about a traumatic event. People often misperceive reports of trauma to be inaccurate because they include components that are more experiential, have fewer cognitively based details and may include missing information or differing information over time. Such reports are consistent with the experience of trauma and with typical victim reports. They tend to be highly accurate for the components of experience the victim is able to recall.

Sensory experiences in the victim's environment can trigger, or serve as reminders, of the traumatic event. Traumatic experience, and reminders of that experience, are often perceived as distressing and overwhelming to victims of trauma. This may cause strong emotional reactivity and counter-intuitive coping behaviors or avoidance of reminders of the trauma, including trying to behave as if nothing is wrong, minimizing or attempts to normalize the trauma, and resistance to discussing it. At times, this avoidance includes not reporting or delayed reporting of the traumatic event or avoiding law enforcement personnel or other helping professionals who are attempting to assist the victim of the trauma, as they are often reminders of the traumatic experience and the fear and distress a victim experienced during the sexual assault.

**Victim Presentation**

In the victim literature, two primary presentations of trauma are identified: Expressed and controlled. Expressed reactions typically involve visible distress, crying, shaking and strongly expressed negative emotion such as fear or anger. Controlled reactions involve a flat or numb looking demeanor with little emotion present. In some cases, controlled responses include attempts to appear unaffected by the trauma. They can include behaviors that may appear counter-intuitive to others who do not understand the nature of trauma, such as spending time with an offender after a sexual assault without appearing overtly distressed to others or returning to a location where one has been harmed. Controlled responses are often consistent with what the rape trauma literature describes as pseudo-adjustment, or rape victim attempts to behave normally, to try to convince themselves that the trauma has not seriously harmed them or changed their lives.

Clearly, expressed reactions are consistent with the anxious responses to trauma and the intrusive symptoms that follow traumatic events. Controlled reactions are consistent with dissociative responses during traumatic events and avoidant or numbing symptoms following trauma. Most victims will fluctuate between the two presentations over time. However, some victims will demonstrate a primary response that is not mediated by fluctuation to the other response. In some cases, these behaviors generalize, and victims may utilize one of the coping behaviors as primary most of the time.

**Victim Trauma Responses Over Time**

Additional victim reactions to trauma can include persistent hyper-arousal, often accompanied by increased fear coupled with constant screening of the environment for potential threats, and affective responses or intense negative feelings such as fear, terror, anger or hopelessness. Other intrusive symptoms following trauma may include intrusive thoughts about or images of the traumatic event, flashbacks, nightmares, increased anxiety, panic attacks or sleep disturbance.

Avoidant or numbing symptoms following trauma are related to dissociation during a traumatic event. They can include avoidance of reminders of the traumatic event, resistance to discussing or thinking about the event, emotional numbing or withdrawal including attempts to behave as if nothing is wrong, minimizing the impact of the trauma, and sometimes attempts to numb distress by using alcohol, prescription, or other drugs. Avoidant symptoms may also include withdrawal from friends and family or other social situations.

Victims of serious trauma often have changes in their basic beliefs about their ability to be safe, about their worth as human beings, about the trustworthiness of others and about justice, fairness and meaning. The research literature indicates that trauma is increased if the victim experiences ongoing fear for their safety or self-blame. Safety fears are often present when a victim experiences violence in a familiar environment, especially one they spend time in or return to regularly, such as home, work, school or a normal social environment.  Sexual assault committed by a known offender or someone who is a part of a victim's normal social circle or environment, also increases safety fears. Offender threats clearly further increase those fears. The vast majority of sexual assault victims experience self-blame facilitated, in part by the misinformation about sexual assault that is generally present in our culture and in part by offender victim selection.

Long term reactions to trauma can include symptoms that fluctuate between the intrusive symptoms and the avoidant or numbing symptoms. Some victims develop Post Traumatic Stress Disorder, Anxiety Disorders, Depression, Sleep Disorders, panic attacks, substance abuse, increased suicidal ideation and behavior, difficulty with intimacy, disturbances to functioning in school or work and in other ongoing relationships with family and friends. Physical complaints are also common and include stress related reactions, such as headaches, stomach trouble or pain. As previously noted, these symptoms may emerge immediately following a sexual assault, but it is not uncommon for them to emerge over time.

## Nature and Dynamics of Sexual Assault

Sexual assault, or rape, is most typically believed to be a rare occurrence. Actually, sexual assault is much more common than is generally understood; with estimates from national studies indicating that a substantial minority of women, will experience some form of sexual violence in their lifetime. A large majority of sexual assault victims know their offenders, at least as acquaintances. Research indicates that weapons are rarely used and that only a tiny number result in serious physical injury. In fact, most offenders use only coercion and instrumental force, or the amount of force necessary to complete an assault. Many people believe that sexual assaults are most often committed in dark alleys or parking lots. Most sexual assaults are committed in the victim or the offender's home or in other locations familiar to the victim, such as a friend's home, a workplace or school. It is not unusual that others are present in the same location or near to where a sexual assault is happening.

Sexual assault is a crime of violence that establishes power and control over a victim. Offenders often use it to enhance their own feelings of power or worth. While it is acted out sexually, it bears about as much resemblance to sex from a victim's experience as a severe beating does to touching. Research indicates that sexual offenders accept most rape myths and tend to have highly traditional views of women. Some researchers identify these beliefs as hyper-masculinity. Most offenders plan and mentally rehearse their crimes long before committing them and almost all offenders make efforts to ensure that they will not be caught or held accountable for their behavior. Offender behavior often impacts how victims behave post sexual assault. Contrary to popular belief, sexual offenders are represented in every social, educational, economic, racial, and religious group. They do not typically have identifiable criminal records or mental illnesses. They are most often gainfully employed or in school and have access to age-appropriate consensual sex partners. Many sexual offenders are married or in committed relationships at the time they are committing sexual assaults. Most sexual offenders have multiple victims over time. As a group, sexual offenders are more like the 'normal' demographic of their communities than any other group of offenders. They are often described as likeable and charming and may appear safe and trustworthy to others, making it more likely that they will not be detected.

Women are most vulnerable to what is sometimes identified in the literature as acquaintance rape or non-stranger sexual assault. Typically, this form of sexual assault occurs when an offender and a victim have met in a social situation that is perceived by the victim to be relatively safe or typical in her social environment, through her peer group, work, school, her neighborhood, or family.  In many cases, victims perceive the offender's behavior as positive attention, and understand the nature of the relationships to include mutual attraction, flirting, or dating. Both the victim literature and the offender literature describe offenders who know or have recently met their victims as using techniques identified as 'grooming' to procure and manage their victims. Grooming, a progressive set of behaviors that increases in intrusiveness over time, often involves gaining the trust of an intended victim, and sometimes the victim's family or social circle, usually through normal social interactions. This helps to ensure that both the victim and others who would normally protect them from danger are disarmed by the belief that the offender is a safe person who can be trusted. Grooming is almost always present to some degree, even in acquaintance sexual assaults. This presentation of self as

normal and non-threatening is typical of how most victims describe their offender's behavior when they were initially interacting.

The offender literature indicates that offenders intentionally engage in behaviors that will protect them from being reported or apprehended. They may select victims who have been drinking, who are so inebriated that they cannot consent, or who have passed out. Other offenders select victims who are compromised in some other way, either by their own behavior or reputation, who are alone in social situations, or who they expect to be unlikely to resist due to personality or capacity. Offenders who have power often use their power, as older, more experienced students, drinkers or drug users, social leaders, bosses, teachers, coaches, or religious leaders to procure their victims and help ensure that victims will not report them post assault or will not be believed by others if they do.

When grooming potential victims, offenders begin to cross boundaries, in small ways at first, and usually not sexually. They may engage in behavior that is more physical than a potential victim is comfortable with, stay longer than they said they would, pour or buy an additional drink after a victim has said no, or push limits in other ways. Because of these grooming behaviors, and because they feel they are in a safe environment, with someone they believe to be safe, or who they know or trust, many victims describe not realizing they are in danger until they are already physically or psychologically compromised and unable to resist. Grooming behavior makes victims less likely to recognize offender behavior as dangerous even if it is uncomfortable, more likely to have an investment in the positive aspects of the relationship, and less likely to react strongly to violations of limits or boundaries because they believe the person will stop. Victims who have been groomed by people they know or have met in normal social situations like school or work environments are also less likely to physically resist the inappropriate sexual behavior when it initially occurs and more likely to blame themselves, delay reporting or fail to report the offender, and in some cases even protect the offender after a sexual assault has occurred. If ongoing contact with an offender is necessary, through housing, work, school, family or military service, these dynamics are even more likely to exist.

Some offenders try to isolate their victims. Offering to walk someone home for safety reasons, offering a ride to someone who has been drinking so they do not drive drunk, or suggesting moving to another room that is quieter, can be ways to isolate someone without raising alarm. Isolation can decrease a victim's ability to effectively resist once they realize they are in danger. Offenders know that women who are having difficulty in their personal lives, who have been seen engaging in positive interaction with their offenders, or who have been drinking or using drugs are more likely to be disbelieved about an assault or blamed for it because of their own actions. Offenders know that victims who fail to fight or scream may be more likely to be disbelieved, even though these behaviors are consistent with freezing responses to trauma and dissociation and are common in sexual assaults.

The research literature indicates that there has been an increase in the use of alcohol and drugs to incapacitate victims to engage in sexual assault in recent years. This tactic is identified as drug facilitated sexual assault. Alcohol is consistently identified as the predominant drug used in sexual assault, although some offenders utilize other drugs, typically central nervous system depressants, either combined with alcohol, or alone. Some offenders, identified as those engaging in proactive drug facilitated sexual assault, will intentionally administer drugs to their victims, in some cases, victims

accept the alcohol or drugs voluntarily, sometimes they are administered covertly, and sometimes by force. Other offenders engage in opportunistic drug facilitated sexual assault. These offenders target victims who have been drinking or using other drugs voluntarily, or who are already incapacitated. Opportunistic drug facilitated sexual assault is, by far, the most common form of drug facilitated sexual assault. Both types of drug facilitated sexual assault involve using the substances as a weapon to disarm potential victims, making it easier for the offenders to engage in sexually assaultive behavior. Because alcohol and other drugs used in sexual assault impact motor function, thinking and cognitive skills, including judgement, and the capacity to consent, their use makes it less likely that victims will be able to identify risk quickly, less likely that they will be able to effectively resist an assault, and, often, more difficult for them to remember details of the assault. Because alcohol and sometimes drugs are often present in social situations, most victims do not identify offers of substances as potential risk factors. Some offenders attack women who are already passed out or asleep, to the same effect. Offenders know that women who have difficulty with physical resistance or who have been drinking or using drugs are more likely to be disbelieved about an assault or blamed for it because of their own actions. Some offenders will drink or take drugs and later rely on their use of substances as an excuse for an assault, although research is powerfully clear that there are no substances that cause someone to commit sexual assault.

The positive and often non-sexually abusive relationships that the offender has with others may make it less likely that others will believe or support victims if they disclose the violence. Environments that are dominated by males, like many schools and universities, sports environments whether school or professionally based, military environments, the sciences and financial institutions often exacerbate others lack of belief and support when victims of sexual assault do report. In circumstances where the offender has a role that gives them power over others, whether as a student leader, an employer, teacher, coach, in the military, or as a community leader, they often choose victims who have less power than they do, understanding that most often, the person with the more powerful position is more likely to be believed if a report is made. Offenders often try to have ongoing contact with their victims as a strategy to demonstrate to others that nothing is wrong. Some offenders have ongoing contact as a way of intimidating or threatening their victims to stay silent and not report the assault. This is particularly prevalent when offenders are intimate partners of victims or in ongoing housing, work, school or sports relationships with their victims.

It is generally believed that victims fight to the point of injury and that anyone who really wants to do so can effectively fight off an assailant. In fact, particularly in non-stranger rapes, many victims are compromised to the point where they cannot actively fight or flee, before they realize they are in grave danger.  The freezing trauma response, identified above, also makes extreme physical resistance less likely, as does dissociation. Most victims do engage in attempts to resist an assault, even if they are not violent resistance. Saying that they are not ready, turning their heads, crying, struggling and refusing to participate are all means of resistance used by victims who are being sexually assaulted. Some victims submit due to fear or inability to resist, but submission is not consent to sexual behavior. When a victim has either voluntarily ingested or been given alcohol or drugs, their ability to resist is often further compromised.

A large majority of the public also assumes that every victim will report sexual assault and that they report immediately post assault. Actually, victims rarely report to the authorities. Most large national studies indicate that only a minority of sexual assault victims ever report. Recent studies of college women who are sexually assaulted by someone they know or have met in what they perceive to be a safe environment indicate that only a tiny minority of them report being sexually assaulted. Reasons for not reporting include fear of not being believed or being blamed for the assault and fear of others knowing what happened to them. Other victims, particularly in educational or other close community settings, fear retaliation for reporting by the offender or the offender's colleagues or friends.

Those most likely to report are adult women sexually assaulted by strangers, who have relatively serious physical injuries related to the assault, the most rare sexual assault circumstances. Victims of sexual assault, who do report, most often delay their reports, sometimes for hours, days or months, and sometimes for long periods of time. For instance, studies of the small number of college aged victims who report sexual assaults indicate that the average delay prior to reporting is almost a year. Rape victims rarely report directly to law enforcement. Those who do report most often tell someone they trust first, who then urges them to make a formal report. Young women most often tell a trusted friend or peer. Some victims fear law enforcement related to previous personal experience or experiences friends, family members or people with whom they share race or culture have had. This may completely deter or delay their reporting further.

The research literature indicates that many victims of sexual assault at the hands of people they know do not initially identify what happened to them as sexual assault, often because they believe the misinformation that is common in our culture about sexual assault being committed by strangers with weapons, who leave serious physical injuries. It is common that victims are initially traumatized, but that it may take time for them to understand and name their experience sexual assault or rape. Other women may fail to recognize their experience as sexual assault because they blame themselves for their own behavior such as not fighting during the assault due to a freezing or dissociative response they fail to understand, drinking, taking drugs or agreeing to spend time with the offender.

For many of these reasons, and for reasons consistent with dissociative coping behaviors related to trauma, many sexual assault victims have continued contact with their offenders. They may stay with an offender after an assault, without attempting escape, until the offender takes them home, until the end of party or until their work shift is over. They may continue to have contact in their common social groups, at work, with friends, at school, family functions or other social activities without appearing outwardly upset or distressed. The rape trauma literature would identify this behavior as part of the pseudo adjustment stage of sexual assault trauma when victims try to act as if nothing has changed and that the assault has not impacted their lives. Many victims identify these behaviors as attempts to protect themselves from additional negative consequences such as victim blaming or retaliation, especially in educational settings.

Most victims of sexual assault feel great shame and humiliation about their experience. They commonly describe feeling powerless and violated. Many fear that they will be killed during an assault. Additionally, they may feel that they failed themselves by "allowing the assault to happen" due to the public misperception that anyone who really wants to can stop or prevent a sexual assault, and at

times, their failure to understand their own freezing responses or self-blame based on use of drugs or alcohol. Many question their own judgment about people, believing they should have known the offender would hurt them. Victims often describe feeling dirty after an assault. They may shower, wash their clothing or bedding and in some cases, discard or destroy the clothing they were wearing when an assault occurred. Some victims will delete text messages or other social media on which they communicated with an offender to rid themselves of reminders of the offender from their lives. These are attempts to get rid of the 'dirty' feeling many victims experience post assault, rather than an attempt to 'destroy evidence' as it is sometimes portrayed.

Rape victims may also experience a profound lack of capacity to feel safe, nightmares, intrusive thoughts of the assault, negative changes in functioning, such as inability to maintain their normal routine at work or school, failing grades, changing jobs or schools, extreme changes in personal presentation such as cutting their hair or wearing an entirely different style of clothing, anxiety, sleep difficulty and negative impact on their interpersonal relationships and their sexual behavior. These symptoms can emerge quickly, after long periods of time or re-emerge long after an assault occurs if a victim is exposed to reminders in the environment or if they have reason to have additional contact with their offender.

After an assault, some victims may engage in behaviors that seem counterintuitive or difficult to explain, such as staying with an offender until the end of a social event, party or until their work shift is over, as previously discussed in this report; minimizing the sexually assaultive behavior or behaving 'normally' rather than appearing distressed to others, engaging in dangerous behavior, sexual behavior with people who did not sexually assault them or increasing use of drugs and alcohol. While these behaviors are often used by others to blame victims or to question whether a victim was assaulted, they are common, if misdirected, attempts to establish control in areas impacted by their complete lack of control during the sexual assault. In some cases, they are responses to threats from offenders who tell victims they will harm them if anyone finds out about the assault. Behaving normally, for instance, is often related to the pseudo-adjustment stage of rape trauma or to trying to ensure that others will not discover what has happened to them and blame them. Sometimes acting normally is an attempt to ensure the victim will not be retaliated against for reporting the assault, particularly if a victim perceives their offender to be a powerful or respected person. A victim may be engaging in sexual behavior post assault, which is often used by others to insinuate the victim was not sexually assaulted. In some cases, women have sexual contact with people they know will not harm them to remind themselves that not everyone is a rapist. Some may choose to engage in sexual contact with others as a means of choosing who can have sex with her and when, instead of waiting for someone to take sex without her permission. Increased use of drugs and alcohol is often related to attempts to numb or blunt distressing emotional responses or intrusive recollections of the event, flashbacks or nightmares related to the assault.

Many people believe that violent stranger rape causes significant harm but tend to minimize the harm caused by what are perceived by many as 'lesser' crimes, particularly those committed by known offenders or people victims have met in social situations they typically consider to be safe. In reality, people sexually victimized by someone they know most often experience great harm. They not only lose their capacity to trust strangers, but the capacity to trust people they know or thought they

could trust, which causes a greater negative impact on their ability to negotiate interpersonal relationships. Additionally, people victimized by known offenders may develop a distrust of their own judgment, based on the mistaken belief that they should have known the person was a sexual offender or that they were going to victimize them. Sexual victimization is one of the most serious traumas a human being can experience, second only to extended exposure to combat. It is more likely to cause negative mental health consequences than any other trauma. Research on victim impact finds that ongoing fear and anticipation of additional assaults, often the case with known offenders; dissociative coping behaviors; having an ongoing relationship with the offender; or having a negative response if the crime is reported either by system personnel or by friends and family members; are components of sexual victimization very likely to cause additional long term negative harm. In many cases, a victim's ability to stay in their chosen housing, school or career, can be impacted as well, increasing the likelihood of harm.

Depending on the severity of a victim's trauma reaction to the sexual assault, she or he may also develop Post Traumatic Stress Disorder, Anxiety Disorders, Depression, Panic Attacks, Sleep Disorders, self-injurious behavior, engage in suicide attempts, or develop substance abuse problems. In the most severe reactions, victims may be hospitalized, lose their jobs, quit school, experience a substantial change in their social network, move, or suicide. These effects can be profound and long lasting. Longitudinal research studies indicate that many sexual assault victims continue to experience serious distress up to 20 years post assault and some will experience distress throughout their lives.

## Literature

A brief list of relevant literature which has informed my experience and understanding of these issues is included below.

**Trauma**

- Coping with Trauma: Hope through Understanding                     Allen
- Diagnostic and Statistical Manual of Mental                              American Psychiatric Association
  Disorders, 5th Edition
- "Stress Signaling Pathways that Impair Pre-Frontal                   Arnsten
  Cortex Structure and Function" in Nature Reviews:
  Neuroscience
- "Primitive Mechanisms of Trauma Response: An                        Baldwin
  Evolutionary Perspective on Trauma Related
  Disorders," In Neuroscience and Biobehavioral
  Reviews
- Acute Stress Disorder                                                              Bryant and Harvey
- Trauma Transformed                                                              Bussey and Wise, Eds.
- "Dissociation and Posttraumatic Stress Disorder,"              DePrince et al
  In PTSD Research Quarterly

- <u>Trauma and Recovery</u>                                        Herman
- <u>Impact of Trauma on Brain, Experience, Behavior and</u>  Hopper
  <u>Memory</u>
- "Why Rape and Trauma Survivors Have Fragmented   Hopper and Lisak
  and Incomplete Memories," in <u>Ideas</u>
- "Fear and the Defense Cascade: Clinical Implications  Kozlowska et al
  And Management" in <u>Harvard Review of Psychiatry</u>
- "Tonic Immobility During Sexual Assault – a Common  Moller et al
  Reaction Predicting Post Traumatic Stress Disorder
  And Severe Depression" <u>in Acta Gynocologica et</u>
  <u>Obstetricia Scandinavica</u>
- <u>The Body Remembers: The Psychophysiology of</u>          Rothschild
  <u>Trauma and Trauma Treatment</u>
- <u>The Post Traumatic Stress Disorder Sourcebook</u>       Schiraldi
- <u>Clinician's Guide to PTSD</u>                                    Taylor
- "Dissociation: An Insufficiently Recognized Major      van der Hart et al
  Symptom of Complex Posttraumatic Stress Disorder"
  in <u>The Journal of Traumatic Stress</u>
- "Clinical Implications of Neuroscience Research         van der Kolk
  in PTSD," in <u>Annals of New York Academy</u>
  <u>of Sciences</u>
- "Disorders of Extreme Stress: The Empirical             van der Kolk et al
  Foundation of a Complex Adaptation to Trauma" in
  <u>Journal of Traumatic Stress</u>
- <u>Traumatic Stress: The Effects of Overwhelming</u>       van der Kolk et al, Eds.
  <u>Experience on Mind, Body and Society</u>
- <u>Journal of Traumatic Stress</u>                              Various Authors; Peer Reviewed
                                                                    Journal
- "A comparative analysis of PTSD Among Various          Wilson et al
  Survivor Groups" in <u>Trauma and Its Wake</u>
- "Dissociative Symptomology in Posttraumatic            Zucker
  Stress Disorder and Disorders of Extreme Stress",
  in <u>Journal of Trauma and Dissociation</u>

**Sexual Assault**

- "Alcohol Related Sexual Assault: A Common Problem   Abbey
  Among College Students" in <u>Journal of Studies on</u>
  <u>Alcohol</u>
- <u>Rape: The Misunderstood Crime</u>                          Allison and Wrightsman

- Sex Offender Management, Assessment and Planning    Baldwin et al
  Initiative
- National Intimate Partner and Sexual Violence        Black et al
  Survey
- Prevalence and Characteristics of Sexual Violence,   Breiding et al
  Stalking, and Intimate Partner Violence Victimization
  National Intimate Partner and Sexual Violence Survey,
  United States, 2011 in Centers for Disease Control
  and Prevention Morbidity and Mortality Weekly Report
- "Violence Against Women, Outcome Complexity          Briere and Jordan
  And Implications for Assessment and Treatment" in
  Journal of Interpersonal Violence
- Rape: Crisis and Recovery                            Burgess and Holstrom
- Recidivism of Sex Offenders                          Bynum et al
- "The Psychological Impact of Rape Victims'           Campbell
  Experiences with the Legal, Medical and Mental
  Health Systems" chapter in Applied Ethics in Mental
  Health Care
- Report on the AAU Campus Climate Survey on Sexual    Cantor et al
  Assault and Sexual Misconduct
- "Immediate Coping Strategies of Rape Victims" in     Frazier and Burnett
  The Journal of Counseling and Development
- A Compendium of Sexual Assault Research              Harrellson et al
- Critical Issues in Sexual Assault                    Holm-Hanson & Kelly
- By the Numbers: Sexual Violence Statistics           Illinois Coalition Against Sexual
                                                       Assault
- "Sexual Violence" in World Report on Violence        Jewkes et al
- Drug-facilitated, Incapacitated, and Forcible Rape:  Kilpatrick et al
  A National Study
- Rape in America                                      Kilpatrick et al
- "Understanding National Rape Statistics" in          Kilpatrick and McCauley
  VAWNet Applied Research Forum
- The Rape Victim                                      Koss and Harvey
- Campus Sexual Assault Study                          Krebs et al
- "Repeat Rape and Multiple Offending Among            Lisak and Miller
  Undetected Rapists" in Violence and Victims
- Improving Responses to Sexual Assault                Lonsway and Archambaud
  Disclosures: Both Informal and Formal Support Providers
- Acquaintance Rape                                    National Center for Victims of Crime
- "Beyond Drink Spiking: Drug and Alcohol Facilitated  Neame
  Sexual Assault" in Australian Center for the Study
  of Sexual Assault
- "The Relationship Between Alcohol Consumption        Norris
  And Sexual Victimization" in VAWNet Applied

Research Forum

- National Victim Assistance Academy Participant          Office for Victims of Crime, Various
  Manual                                                                    Authors, NVAA Work Group
- Sexual Assaults Facilitated by Drugs or Alcohol          Olszewski
- Predators, Pedophiles, Rapists and Other Sex             Salter
  Offenders
- "Understanding Denial in Sexual Offenders: A             Schneider and Wright
  Review of Cognitive and Motivational Processes
  To Avoid Responsibility" in Trauma, Violence and Abuse
- "The Dark Figure of Sexual Recidivism," in University    Scurich and John
  Of California School of Law Legal Studies Research
  Paper Series
- Standards for the Assessment, Evaluation,                Sex Offender Management Board
  Treatment and Behavioral Monitoring of Adult
  Sex Offenders
- Rape and Sexual Assault Victimization Among              Sinozich and Langton
  College-Age Females, 1995-2013
- Sex Offenders: Myths, Facts and Treatment                SOTMP Colorado Department of
                                                                              Corrections
- Prevalence, Incidence, and Consequences of               Tjaden and Thoennes
  Violence Against Women: Findings from the
  National Violence Against Women Survey
- Violence Against Women Act (VAWA): Sexual                Van Horn
  Violence & College Students
- Journal of the Association for the Treatment             Various Authors; Peer Reviewed
  Of Sexual Abusers                                                   Journal
- Rape: How Women, the Community and the                   Wang and Rowley
  Health Sector Respond
- "Sexual Coercion Practices Among Undergraduate          Young et al
  Male Recreational Athletes, Intercollegiate
  Athletes, and Non-Athletes" in Violence Against
  Women
- "The Psychological Consequences of Sexual               Yuan et al
  Trauma" in VAWnet Applied Research Forum

While this Summary covers topics I have identified as relevant to possible issues in a sexual assault case, any specifics of my testimony will, of course, depend on questions asked during the trial.

Respectfully Submitted,

*Jean G. McAllister*

Jean G. McAllister, MSW