**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                   Criminal Case No. 22-cr-208-RMR

JOSE GALIANO,
a/k/a JOSE GALIANO APAZA,

    Defendant.

**DEFENDANT'S MOTION IN LIMINE TO EXCLUDE
EXPERT JEAN MCALLISTER**

The Defendant, Jose Galiano, through undersigned counsel, hereby submits this *Motion in Limine* to exclude the Government's expert for failing to comply with Fed. R. Crim. P. 16 and as further set forth below. The Government's expert Jean McAllister should be excluded, or, in the alternative, a hearing should be held prior to trial. In support hereof, Defendant states:

**FACTUAL BACKGROUND**

The one-count indictment relates to events that allegedly occurred between August 1st and August 6th, 2020. The only allegation of the indictment is that Cadet Galiano forced Cadet L.K. to engage in a sexual act. It is undisputed that the two entered into a committed and ongoing romantic and sexual relationship immediately following this event. They continued to date for well over a year. It is undisputed that L.K. did not disclose for well over a year. L.K. said the following about the events of "Transition Week" which occurred in early August:

After basic training ended, there was a transition week before school began where the cadets had mostly free time. During that week L. K. started going to Cadet Galiano's dorm room in the evenings and staying until late at night or early mornings. According to L.K., after repeatedly going to Defendant's room, he asked if they could have sex and she said yes. The alleged assault follows. L.K. specifically reiterates that after the sexual encounter at issue, they both decided to enter into a relationship and then stayed in said exclusive sexual relationship until fall of 2021.

An expert in domestic violence is wholly irrelevant to the alleged offense in which it is undisputed that the two were not in a relationship during the same nor is there any anticipated testimony of domestic violence during the trial. Jean McAllister also claims to simultaneously be an expert in the ways in which sexual assault victims react while being traumatized and after being traumatized. The Government has not provided their reasons for introducing her expertise in accordance with Fed. R. Crim. P. 16 and instead is leaving the Defense to guess at the same.

## ARGUMENT

**I.   McAllister Should Be Carefully Scrutinized As To Her Intended Testimony.**

McAllister's credibility is in question and should be scrutinized prior to trial. Just last year the Colorado Court of Appeals found that Ms. McAllister testified about impermissible topics that were not just barred by law and statute, but topics that were "demonstrably untrue." *People v. Vanderpauye*, 500 P.3d 1146, 1156 (Colo. App. 2021) (holding that Ms. McAllister's testimony that "it was a myth that sexual assault is somehow a mistake or miscommunication" was improper and should be excluded at the re-trial). Jean McAllister has testified for the prosecution over 170 times in various courts and only rarely for the defense. The Defendant respectfully requests her testimony be carefully scrutinized both prior to trial and if she is permitted to opine, during trial.

**II.   It Is Unduly Prejudicial For McAllister To Testify About A "Victim's" Mental State.**

Since a recent state criminal conviction was reversed on the grounds of her testimony, this Court should exercise extreme caution in allowing the same. Jean McAllister holds a Master's in Social Work. Such a degree does not create an expertise in psychology or psychiatry. Her offered testimony will seemingly address the mental state of traumatized victims while we know nothing of L.K.'s actual mental state. It is improper for her to simply recite the characteristics of trauma and turn it over to the jury to then "diagnose" her when she is not qualified to make such a diagnosis herself. Despite her statements that she obtained counseling from Kenneth Calhoun at the Academy, the Government refused to provide any actual records for the same. Further, the Government objected to the Defendant's request for a psychological examination and mental health records of the alleged victim and this Court subsequently denied the Defendant's request. See Docket #36. Accordingly, it is unduly prejudicial to now allow the Government to put an expert on to speculate about the traumatic mental state of L.K. when it will be impossible to rebut with actual evidence of whether she in fact was ever traumatized and whether it had any long-term effects. Nor will any witness be available to offer admissible evidence of L.K.'s psychological state immediately following the alleged incident. To even presume that the event was indeed "traumatic" is impermissibly prejudicial to the Defendant. Since the counseling and mental health records were denied, any expert opinion upon how other victims may behave is unfairly prejudicial and should similarly be denied. Nor will any witness be available to offer admissible evidence of L. K.'s diagnosed psychological state immediately following the alleged incident. McAllister's qualifications to support her proffered expertise should be tested. She holds a master's degree in Social Work. Such a degree does not create an expertise in psychology, psychiatry, or neuroscience. Her testimony proffers to address the mental state of "traumatized victims" while

we know next to nothing of L.K.'s actual mental state at the time of the alleged event nor any time thereafter.[1]

The Government refused to provide mental health records for L.K. and this Court previously denied the Defendant's request for psychological records. See Docket #36. Accordingly, it will be impossible to rebut with actual evidence what McAllister claims to be the mindset and emotional state of L.K. To even presume that the event was indeed "Traumatic" is impermissibly prejudicial to the Defendant. Since the counseling and mental health records were denied, any expert opinion upon how other victims behave is unfairly prejudicial and should similarly be denied. Nor will any witness be available to offer admissible evidence of L. K.'s psychological state immediately following the alleged incident.

### III.     The Government Has Not Complied With Fed. R. Crim. P. 16

Regarding Ms. McAllister, the government has omitted to give the defense the disclosures required by Fed. R. Crim. P. 16(a)(1)(G), which in pertinent part states:

> **(G) Expert Witnesses.** At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. . . . The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

Fed. R. Crim. P. 16(a)(1)(G). The government has provided an extensive thirteen-page general proffered testimony. See Docket #82-1. Although there is a letter dated September 27, 2022, which summarizes, it states that her "*Summary of Expert Testimony* is attached" referring to her thirteen-page report which she entitles "Summary of Possible Expert Testimony", and which notes at the end that her testimony at trial may differ yet still. (Docket #82-1 at p. 46). The Government later

---

[1]

"narrowed-down" the proposed testimony to omit paragraph three from its nine-paragraph letter. It is unclear however, whether the Government is still intending to use the thirteen-page "Summary" attached as well. Rule 16 requires a summary that explains the bases and <u>reasons</u> for Ms. McAllister's opinions. Defendant respectfully requests that this Court not allow Ms. McAllister to give "expert opinions" without compliance with the disclosure requirements of Fed. R. Crim. P. 16(a)(1)(G).

## IV. Jean McAllister's Testimony Should Be Excluded Because It Would Do Nothing But Vouch For The Credibility Of Another Witness

"[E]xpert testimony which does nothing but vouch for the credibility of another witness encroaches upon the jury's vital and exclusive function to make credibility determinations, and therefore does not 'assist the trier of fact' as required by Rule 702." *United States v. Hill*, 749 F.3d 1250, 1259 (10th Cir. 2014), *quoting United States v. Charley*, 189 F.3d 1251, 1272 (10th Cir. 1999). The government has not specified why Ms. McAllister's testimony would possibly be relevant, but seemingly Ms. McAllister's testimony would be improper "vouching" for the credibility of L. K.

In *Hill*, when "[a] law enforcement agent informed the jury that he was specially trained in ferreting out lies," the Tenth Circuit reversed because the error was "plain." *Hill*, 749 F.3d at 1267. The credibility of witnesses is not an appropriate subject for expert testimony because such testimony:

> (1) usurps a critical function of the jury; (2) is not helpful to the jury, which can make its own determination of credibility; and (3) when provided by impressively qualified experts on the credibility of other witnesses is prejudicial and unduly influences the jury.

*Id.* at 1258 (quotations omitted). The Government's proffer of Ms. McAllister to testify regarding "victim and perpetrator behavior in domestic violence relationships" is designed to explain away

5

why L.K. behaved as she did following the alleged offense. McAllister will also inform the jury that she is specially trained in the behavior of domestic violence victims, thus implying both that L. K. is a domestic violence victim and that the jury should believe her even despite all. This Court should not allow Ms. McAllister to testify because it would be impermissible vouching and the error would be plain. Ms. McAllister's proffered testimony is nothing more than a "thinly veiled" opinion that the victim of an alleged sex abuse is telling the truth in a case that boils down to a credibility contest between the defendant and L.K. *See, United States v. Whitted,* 11 F.3d 782, 787 (8th Cir. 1993) (discussed in *United States v. Magnum,* 756 F. App'x 807, 814 (10th Cir. 2018).

**V.     Any Proposed Domestic Violence Testimony Of Jean McAllister Should Be Excluded Due To Its Lack Of Relevance And Its Potential For Unfair Prejudice**

It is unclear whether the Government intends to offer some domestic violence expert opinion based upon the inclusion of the same in the broad disclosures. As such, the same is necessarily addressed here. The basic threshold for admission of evidence is whether it is relevant under Fed. R. Evid. 401. The only facts that will be "of consequence" at trial of this matter are those that tend to disprove or prove the elements of the charged crime - aggravated sexual abuse. Rule 403, however, provides important safeguards for admission of evidence, even if it is relevant, if its probative value is outweighed by the danger of unfair prejudice:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403. See also Advisory Committee Notes to Rule 403 (evidence of "unquestioned relevance" should be excluded for multiple reasons including the risk of "inducing decision on a purely emotional basis"). Fed. R. Evid. 702 and 403 govern the admissibility of expert testimony. Rule 702 provides that an expert witness qualified by knowledge, skill and experience, training or

education may testify if "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue." The court should focus on the reliability and relevance of the proffered evidence and determine that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony. In determining whether expert testimony is admissible, the district court generally must first determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion. Fed. R. Evid. 702. Second, if the expert is sufficiently qualified, the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology. *United States v. Nacchio*, 555 F.3d 1234, 1236 (10th Cir. 2009). The admissibility of all expert testimony is governed by the principles of Fed. R. Evid. 104(a). Under that Rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence. *United States v. Nacchio*, 555 F.3d at 1236.

**VI.     Alternatively, This Court Should Grant a Pre-Trial Hearing Where Ms. McAllister Testifies To Determine The Admissibility Of Her Testimony.**

In the event this Court will not exclude Ms. McAllister's testimony based on this *Motion*, Cadet Galiano respectfully moves for a pre-trial hearing where he can question Ms. McAllister about her proffered testimony and expertise.  A hearing on the reliability, relevance, and thus admissibility, of such testimony is particularly necessary where the prosecution and its proposed expert witness have taken the kitchen sink approach in providing an overly generalized endorsement and proposed areas of testimony. Cadet Galiano is entitled to have this Court make specific findings regarding the admissibility of the prosecution's proposed experts and to determine whether the proffered testimony comports with the requirements of *Daubert.* Further, given the recent Colorado state case law where Ms. McAllister's testimony was deemed

7

inadmissible and excluded from re-trial, it would behoove all the parties to have a preview of her testimony as it relates to this specific case so as it prevents a potential mistrial or, in the event a conviction, a reversible appellate issue.

To introduce expert testimony, the proponent must first demonstrate that the proffered expert is "qualified as an expert by knowledge, skill, experience, training or education," to testify "in the form of an opinion or otherwise." Fed. R. Evid. 702. Next, the Court must be satisfied that the proffered testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). The Court acts as the "gatekeeper," to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable*." Id. See also Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141 (1999); *United States v. Medina-Copete*, 757 F.3d 1092, 1095, 1101-05 (10th Cir. 2014) (reversal for new trial because district court had "improperly vetted" law enforcement officer leading to impermissible and prejudicial testimony).

Under Fed. R. Evid. 104(a), the proponent of the testimony bears the burden of establishing to the trial judge that "the pertinent admissibility requirements are met by a preponderance of the evidence." Fed. R. Evid. 702 Advisory Committee's Note (2000 amends), *citing Bourjaily v. United States*, 483 U.S. 171 (1987). Admissible expert testimony must be based on more than "subjective belief or unsupported speculation." *Daubert,* 509 U.S. at 590. When a party objects to proffered expert testimony, the district court must give specific reasons, on the record, indicating it has fulfilled its duties as "gatekeeper." *United States v. Velarde*, 214 F.3d 1204, 1209-12 (10th Cir. 2000) (reversal and remand for new trial was required due to district court's abuse of discretion in failing to make a reliability determination regarding expert witness testimony).

Expert testimony is inadmissible unless it is "derived by the scientific method" and "supported by the appropriate validation." *Daubert,* 509 U.S. at 590. To satisfy this burden, the

government must establish by a preponderance of the evidence that "the reasoning or methodology underlying the testimony is scientifically valid" and can properly be applied to the facts in issue. *Id.* at 592-93. The *Daubert* Court discussed several factors to be considered in the reliability analysis:

(1) whether the particular theory can be and has been tested;

(2) whether the theory has been subject to peer review and publication;

(3) the known or potential rate of error;

(4) the existence and maintenance of standards controlling the technique's operation;

(5) whether the technique has achieved general acceptance in the relevant scientific community.

*Daubert* at 593-94. This list is non-exhaustive and non-exclusive. *Kumho Tire,* 526 U.S. at 150-51; *United States v. Call*, 129 F.3d 1402, 1404 (10th Cir. 1997); *United States v. Rodriguez–Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006).

Even if a court determines that an expert is qualified and his testimony is reliable, Rule 702 requires that the evidence or testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *Daubert*, 509 U.S. at 591; *Rodriguez–Felix*, 450 F.3d at 1122-23. In *Rodriguez–Felix*, the Tenth Circuit said that in making the Rule 702 determination, a district court should look to whether the proposed testimony is relevant, whether it is "within the juror's common knowledge and experience," and "whether it will usurp the juror's role of evaluating a witness's credibility." *Rodriguez–Felix*, 450 F.3d at 1123.

Defendant objects to all aspects of Ms. McAllister's proposed testimony at this time and asks for her to be excluded or for a *Daubert* gatekeeping hearing.

**WHEREFORE**, Galiano respectfully requests (1) that this Court rule before trial that the

government's proffered witness regarding sexual assault trauma, Ms. McAllister, will not be allowed to testify at trial; (2) in the alternative, that this Court schedule a hearing to determine whether the government can establish the pertinent admissibility requirements by a preponderance of the evidence; and (3) that this Court enforce the Government's compliance with the disclosure requirements of Fed. R. Crim. P. 16(a)(1)(G).

                                        Respectfully submitted,

                                        s/Michon Hughes
                                        Michon L. Hughes, OK Bar #22184
                                        15 W. 6th St., Ste. 2800
                                        Tulsa, OK 74119
                                        Phone (918) 592-1144
                                        Fax    (918) 576-6907
                                        Michonhughes@outlook.com
                                        *Co-Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2023, I electronically transmitted the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case.

                                        s/ Michon L. Hughes

11